## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

DEBORAH L. FORBIS                              CIVIL ACTION NO. 16-0548

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

IGNITE RESTAURANT GROUP, INC.                  MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is Defendant Ignite Restaurant Group, Inc.'s ("Ignite") Motion for Summary Judgment (Record Document 14), arguing that there is no genuine dispute of material fact on one element, subsection (B)(2) of La. R.S. § 9:2800.6, of Plaintiff Deborah Forbis' ("Mrs. Forbis") negligence claim. For the reasons stated in the instant Memorandum Ruling, Ignite's Motion for Summary Judgment is hereby **GRANTED** as to the grounds asserted in the Motion. As fully explained in Section II, D, *infra*, the Court is construing the instant Motion as one seeking partial summary judgment, as granting the Motion only forecloses two of three possible methods of meeting subsection (B)(2). However, under the Court's authority to consider summary judgment on its own, the Court also makes the preliminary finding that there is no genuine dispute of fact as to the third method of meeting subsection (B)(2). As such, Mrs. Forbis is hereby **ORDERED** to respond to this finding in accordance with the terms of the instant Memorandum Ruling if she wishes to oppose the entry of summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a fall at Joe's Crab Shack ("Joe's"), a restaurant owned and operated by Ignite at the Louisiana Boardwalk in Bossier City, Louisiana. See Record Document 1-2 (plaintiff's state court petition). On April 12, 2015, Mrs. Forbis and her husband David Forbis ("Mr. Forbis") visited Joe's. See id. It was raining outside that day.

See id. at 1; see Record Document 14-3 at 2 (deposition page 26 lines 20-23). Though it is not exactly clear from the petition and the summary judgment evidence, it appears that Mrs. Forbis slipped and fell somewhere close to the entrance to Joe's. See Record Documents 14-2, 14-3, and 14-5 (summary judgment evidence). Mrs. Forbis felt her feet slip on what she describes as a slippery substance, and her clothes felt wet on the side where she fell after the fall. See Record Document 14-2 at 7 (deposition page 35 lines 8-12). Mr. Forbis was unable to say whether there was water or another liquid on the floor where Mrs. Forbis fell. See Record Document 14-3 at 2 (deposition page 26 lines 10-23). Though other employees may have been present, the summary judgment evidence only contains evidence from one such employee, Faith Beyersdorf ("Beyersdorf"), who stated in her deposition that after the fall, she did not see anything on the floor where Mrs. Forbis fell. See Record Document 14-4 at 2 (deposition page 10 lines 2-7).

Mrs. Forbis filed the instant negligence action in state court on April 7, 2016. See Record Document 1-2. Ignite removed the instant action to this Court on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332. See Record Document 1. On September 26, 2016, Ignite filed a Motion for Summary Judgment arguing that there are no genuine disputes of material fact on the following elements of Mrs. Forbis' cause of action under Louisiana's merchant liability statute, La. R.S. § 9:2800.6: (1) the existence of a hazardous condition in or on Ignite's premises that caused her fall; and (2) whether Ignite had either actual or constructive knowledge of the condition prior to her fall. See Record Document 14-1 at 7. On January 10, 2017, Mrs. Forbis filed a Memorandum in Opposition, accompanied by an affidavit by an engineer she sought to use as an expert witness, Jason English ("English"). See Record Documents 19, 19-1 and 19-2. On

February 23, 2017, the Magistrate Judge struck English's affidavit because Mrs. Forbis failed to timely provide an expert report for him under the Court's scheduling order. See Record Document 31. Thus, the only evidence in the summary judgment record is that which was attached to Ignite's Motion. See Record Documents 14-2, 14-3, and 14-4.

## LAW AND ANALYSIS

### I.    Legal Standards

#### A.  The Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

A non-movant, however, cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." <u>Little</u>, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." <u>Id.</u> Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>Id.</u>

In determining whether a particular fact is "material," courts must look to the substantive law governing the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> In a case based upon the diversity of citizenship jurisdiction of the federal courts, a federal court must look to the state law governing the case to determine materiality of allegedly disputed facts. <u>See</u> <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 206 (5th Cir. 2007).

In determining whether there is a genuine dispute as to a particular material fact, a Court "must view the evidence presented through the prism of the substantive evidentiary burden" that would be applied at trial. <u>Anderson</u>, 477 U.S. at 254. Under Louisiana law, a plaintiff in a delictual (tort) action has the burden of proving each element of his or her cause of action by a preponderance of the evidence. <u>See</u> <u>Maranto v. Goodyear Tire & Rubber Co.</u>, 650 So. 2d 757, 759 (La. 02/22/95). Thus, the Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- whether there is evidence upon which a jury can

properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." Anderson, 477 U.S. at 252 (internal quotations omitted).

### B. The Equal Inference Rule

"Where proven facts give equal support to each of two inconsistent inferences . . . neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover." Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339 (1933). Courts refer to this rule as the "equal inference rule." Burgan v. Kroger Tex., L.P., 2016 U.S. Dist. LEXIS 86544 at *16 (N.D. Tex. 2016), citing, *inter alia*, Pennsylvania R. Co., 288 U.S. 333. Both federal and state courts have stated this same "rule of logic, as well as law," in slightly different terms than the Supreme Court in Pennsylvania R. Co., but the essential concept remains the same. Lozano v. Lozano, 52 S.W.3d 141, 157 (Tex. 2001) (Hecht, J., dissenting). One useful modern statement of this rule is as follows:

> [I]f circumstantial evidence supports two reasonable inferences, neither of which is any more likely than the other, can a jury pick one? The "equal inference" rule says no. It is not enough that one inference is as reasonable as another; to be given weight, an inference must be more probable than others. "Reasonable" is not the same as "probable". The "equal inference" rule . . . expressly requires that an accepted inference not only be reasonable but that it be probable.

Id. at 158; see also Texas Co. v. Hood, 161 F.2d 618, 620 (5th Cir. 1947) ("where two equally justifiable inferences may be drawn from the facts proven, one for an[d] the other against the Plaintiff, neither is proven, and the verdict must be against him who had the burden of proof"); City of Keller v. Wilson, 168 S.W.3d 802, 813 (Tex. 2005) ("when the circumstances are equally consistent with either of two facts, neither fact may be inferred"). The equal inference rule only applies at summary judgment when no direct

evidence supports finding the fact in question, as direct evidence would, by definition, support a reasonable jury's finding that the fact is proven under the summary judgment standard. See Direct Evidence, Black's Law Dictionary, (10th ed. 2014) ("evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption"); see Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 8.34, (5th ed. 2012) ("circumstantial evidence is proof that does not actually assert or represent the fact to be proven but from which a factfinder can infer an increased probability that the fact exists"); see Little, 37 F.3d at 1075 (factual controversies must be resolved in favor of the nonmoving party).

Though the Court must not weigh the evidence at summary judgment, such as by taking one witness' word as true over another's, Anderson requires the Court to take the substantive burden of proof that would apply at trial into account at summary judgment. 477 U.S. at 249, 254. When the conclusion that a certain element of a cause of action is met is equally likely as the conclusion that the element is not met, the equal inference rule applies. See Texas Co., 161 F.2d at 620. Logically, if two conclusions are equally likely to be true, one cannot reasonably conclude that one is more likely than the other. Thus, if the equal inference rule applies at summary judgment to a material fact upon which the nomovant bears the burden of proof by a preponderance of the evidence at trial, the Court must grant summary judgment for the movant. See Burgan, 2016 U.S. Dist. LEXIS 86544 at *16 (applying the equal inference rule at summary judgment); Fed. R. Civ. P. 56(a) (summary judgment is mandatory if there is no genuine dispute as to a material fact).

### C. The Louisiana Merchant Liability Act

The Louisiana Civil Code broadly provides for a civil cause of action for damages against tortfeasors, stating that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315. However, in the specific context of negligence actions based on allegedly hazardous conditions existing in or on a merchant's premises, Louisiana's merchant liability statute, La. R.S. § 9:2800.6, provides a more specific set of both duties for merchants and elements that claimants in such cases must prove. The merchant liability statute provides as follows:

A.  A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B.  In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1)  The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2)  The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)  The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.  "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.

La. R.S. § 9:2800.6(A), (B), and (C).

## II.    Analysis

Ignite argues that there are no genuine disputes of material fact on the following elements of Mrs. Forbis' cause of action: (1) the existence of a hazardous condition in or on Ignite's premises that caused her fall; and (2) whether Ignite had either actual or constructive knowledge of the condition prior to her fall. See Record Document 14-1 at 7. Mrs. Forbis argues that there is a genuine dispute of material fact on each of these elements, referencing specific portions of her deposition that she asserts establish a genuine dispute on these elements.[1] See Record Document 19-2.

### A.  The Summary Judgment Evidence

Ignite submitted excerpts from the depositions of Mrs. Forbis, Mr. Forbis, and Beyersdorf as exhibits to their Motion for Summary Judgment. See Record Documents 14-2, 14-3, and 14-5. These deposition excerpts are the only evidence in the summary judgment record. Mrs. Forbis' deposition testimony, in pertinent part, is as follows:

Q:    Okay, when you were waking up the ramp--
A:    Yes, sir.
Q:    --did you see anything on--Well, first off, was there any mat on the concrete floor before you got on the ramp?
A:    I did not see one. I did not pay attention. No, sir. I did not see one.
Q:    Did you see a mat on the ramp itself?
A:    No, sir.

---

[1] Because the Magistrate Judge struck English's affidavit, no evidence that the court may consider accompanies Mrs. Forbis' Response to the Motion for Summary Judgment. See Record Documents 19, 19-1, and 19-2. However, because Mrs. Forbis cites to specific portions of her deposition in her Response, a portion of which is already a part of the summary judgment record as an attachment to Ignite's Motion, the Court must consider whether this portion of the deposition demonstrates a genuine dispute of material fact on the challenged elements. See Fed. R. Civ. P. 56(c)(1)(B) and (c)(3); see Phelps v. State Farm Mut. Auto Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (district court errs when it fails to consider record evidence relied upon in summary judgment motion briefing). Additionally, though Mrs. Forbis does not specifically cite to her husband's deposition or that of Beyersdorf in opposing the Motion for Summary Judgment, the Court has discretion to consider these materials as well in determining whether there is a genuine dispute of material fact. See Fed. R. CIv. P. 56(c)(3).

Q:     Were there any signs out that indicated that there was water or anything else?
A:     None.
Q:     Okay. At the top of the ramp where the doors are was there a mat on the floor?
A:     There was not.
Q:     When you were walking towards the door did you see anything on the floor?
A:     No, sir.
Q:     Were you looking at the floor?
A:     No, sir.
Q:     You were kind of looking at the doors?
A:     Yes, sir.
Q:     All right. You said you slipped?
A:     I did.
Q:     What foot was going down when you slipped?
A:     My--if I remember correctly, my right foot slipped.
Q:     So your left--
A:     I can't--I don't remember exactly. I just felt like I felt my feet come out from under me. So I can't tell you exactly which foot went first, but I felt my feet come out from under me.
Q:     And you've described it as slip (sic). You felt like there was some slippery substance that it just--
A:     Yes, sir.
Q:     --slid out from under you?
A:     Yes, sir.
Q:     All right. You did not trip?
A:     No, sir.
Q:     Did you tell anyone at the restaurant that you tripped?
A:     No, sir.
Q:     Or that you twisted your ankle in your boot?
A:     No, sir.
Q:     You indicated that you were looking for the chair, trying to get into it.
A:     Well, I just kind of--When I pulled my purse up and I sat--I was just sitting straight--straight up. I was kind of looking around. I was going to--I started to try to get up and I couldn't stand on my leg.

Record Document 14-2 at 4-5 (deposition pages 31 and 32). The excerpts of Mrs. Forbis'

deposition testimony in the summary judgment record continue as follows:

Q:     Okay. So ultimately you get in a chair by the door and your husband sees that he needs to come back in and he does?
A:     Yes, sir.
Q:     While you're waiting do you remember any conversations with any of the employees?

A:      No, sir.

Q:      After you fell did you see the employees do anything around the door?

A:      No, sir.

Q:      Did you look down on the floor when you fell to see if there was something there?

A:      I did not.

Q:      Are you able to say that there was water on the floor?

A:      I just know I felt wet kind of on my side. I remember--I remember feeling like--I was thinking I hope I didn't wet on myself.

Q:      So you felt some wetness on your--

A:      Just--Yes.

Q:      --side on your clothes?

A:      But I don't know where it came from. I don't know.

Q:      Did you have any stains or anything like that when you went to look at your clothes after you took them off?

A:      I didn't look. No, sir. I did not look.

Q:      All right. So you didn't see anything when you were walking towards the door, and after you're sitting in the chair you didn't see anything on the floor, but you did feel like there was something wet on your side where you fell?

A:      Because I was like--I was like this (indicating), just, you know, rubbing my leg, because it was hurting so bad, and I'm just kind of moving around. But--but I can't say for sure where it came from.

Q:      Okay. After you fell and you're waiting in the chair, did anybody at the restaurant put down a mat or anything like that?

A:      No, sir.

Q:      Did anybody put out a sign?

A:      No, sir.

Q:      And I think I asked this, but did anybody have to come and clean up anything?

A:      No, sir. I didn't see anyone come up there. They were standing basically on the side, if I remember right, with the gentleman--I know the gentleman in the black apron was standing here talking to David.

Id. at 6-7 (deposition pages 34-35).

Mr. Forbis' deposition testimony, in pertinent part, is as follows:

Q:      So you're going through the doors, and when you turned around and see her your thought was that she was at the shirts?

A:      Still shopping. She was stopping, looking, buying something. Yes.

Q:      Okay. So you turned around and came back in?

A:      I waited out there, giving her a minute or two, and then I turned around.

Q:     So on your way up the ramp did you have any problem navigating the ramp?
A:     Not that I know of, none that I--none that I remember.
Q:     Okay. Did your feet slip at all?
A:     Could not tell you if they did.
Q:     Do you remember there being any water on the floor?
A:     Could not tell you if there was.
Q:     Did you see any signs out that warned?
A:     All I know is all the water outside, I don't know if it got inside. So I don't have--I have no idea about that.

Record Document 14-3 at 2 (deposition page 26 lines 10-23).

The relevant deposition testimony of Beyersdorf, Ignite's employee, is as follows:

Q:     On the day of the accident, whatever day it was, at that point when you walked over did you look around the area where Mrs. Forbis was laying to see if there was anything on the ground?
A:     Yes. And I did not see any water or objects or anything.
Q:     The last sentence says that, "The rug was not turned over to effect her fall." Does that mean that you actually saw that there was a rug down?
A:     At the very front where you walk in where the doors were.

Record Document 14-4 at 2 (deposition page 10 lines 2-12).

## B. The Summary Judgment Evidence Demonstrates A Genuine Dispute of Fact Regarding the Existence of an Allegedly Hazardous Condition.

The Louisiana merchant liability statute applies to negligence actions against merchants for alleged negligence related to hazardous conditions "existing in or on" their premises. La. R.S. § 9:2800.6(B). Thus, in an action under this statute, logically a plaintiff must raise a genuine dispute as to the very existence of the allegedly hazardous condition to survive summary judgment, making its existence essentially a sub-element of a cause of action under the statute. See White v. Wal-Mart Stores, Inc., 699 So. 2d 1081, 1084-85 (La. 09/09/1997) (explaining that proving constructive notice under La. R.S. § 9:2800.6(B)(2) requires proof of both the very existence of a condition and that the condition existed for some time before the plaintiff's fall).

If there were any direct evidence that there was a hazardous condition on the premises, such as a statement by a witness that there was some liquid on the floor, then the Court would have to find a genuine dispute of fact on this matter under the summary judgment standard. However, the above-quoted deposition testimony contains no such direct evidence. See Section II, A, *supra*. Thus, the Court must examine the circumstantial evidence found in this deposition testimony to see if it demonstrates a genuine dispute of fact as to the existence of a hazardous condition in or on the premises. In other words, the Court must examine the reasonable inferences that can be made from this testimony as to the existence of such a condition and determine whether a jury could reasonably find that such a condition existed by a preponderance of the evidence. See Anderson, 477 U.S. at 252.

There is a genuine dispute of fact regarding the existence of a hazardous condition in or on the premises. The deposition testimony quoted above in Section II, A, *supra*, taken as true, demonstrates the following facts regarding the existence of a potentially hazardous condition on the floor of Joe's: Mrs. Forbis stated that (1) she fell after her foot slipped on what felt like some slippery substance and (2) after she fell, she felt wetness on the side of her clothes where she fell.[2] See Record Document 14-2 at 5 (deposition page 32 lines 8-12), at 6 (deposition page 34 lines 17-25), and at 7 (deposition page 35 lines 1-12). By contrast, Beyersdorf stated that *after* the fall, she looked at the area of the

---

[2] When specifically asked whether she felt wet on her side where she fell, Mrs. Forbis did not give a straightforward "yes or no" answer. See Record Document 14-2 at 7 (deposition page 35 lines 4-12). If she had only felt that some nonspecific part of her clothes were wet, then the case would likely be different; the inference that the source of the liquid on her clothes was a condition on the premises, though reasonable, would be equally as likely as the inference that the source was the rain, since she had just walked inside on a rainy day. However, it seems clear from the context of the question and the deposition as a whole that Mrs. Forbis was saying that she felt wet on the side on which she fell.

floor where Mrs. Forbis fell but did not see any liquid there. <u>See</u> Record Document 14-4 at 2 (deposition page 10 lines 2-7).

Thus, there is circumstantial evidence supporting both (1) the conclusion that there was liquid on the floor of Joe's on which Mrs. Forbis fell and (2) the conclusion that there was no such liquid. However, a jury could reasonably conclude by a preponderance of the evidence that there was liquid on the floor of Joe's. A jury could reasonably either (1) believe Mrs. Forbis' testimony and disbelieve that of Beyersdorf; or (2) believe Mrs. Forbis' testimony and believe that of Beyersdorf, concluding that all of the liquid on the floor before the fall ended up on Mrs. Forbis' clothes after the fall, resulting in there being none for Beyersdorf to see after the fall. This means that the parties have "submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075. Under the summary judgment standard, the Court "must resolve all factual controversies in favor of the nonmoving party." <u>Id.</u> Thus, the Court finds that there is a genuine dispute of fact regarding whether a potentially hazardous condition existed on the floor of Joe's.

**C. The Summary Judgment Evidence Does Not Demonstrate A Genuine Dispute of Material Fact Regarding Whether Ignite Had Actual or Constructive Notice of the Existence of the Condition.**

**i.    Actual Notice**

Ignite's Motion for Summary Judgment also argues that there is no evidence that Ignite had either actual or constructive notice of the existence of the allegedly hazardous condition. <u>See</u> Record Document 14-1 at 7. The summary judgment evidence contains no evidence, direct or circumstantial, that Ignite's employees had actual notice of the existence of the condition. Neither Mr. nor Mrs. Forbis made any statements in their depositions regarding whether an employee of Ignite actually knew about the condition

on the floor. <u>See</u> Section II, A, *supra*; <u>see</u> Record Documents 14-2 and 14-3. Beyersdorf's deposition testimony only states that she looked at the area where Mrs. Forbis was laying *after* she fell, and she did not see any water or objects on the ground. <u>See</u> Record Document 14-4. There is no other evidence in the summary judgment record regarding actual notice to Ignite's employees of the existence of a potentially hazardous condition on the floor. Thus, there is no genuine dispute of fact regarding whether Ignite had actual notice of the existence of the allegedly hazardous condition on the floor.

### ii.    Constructive Notice

There is also no genuine dispute of fact regarding whether Ignite had constructive notice of the existence of the allegedly hazardous condition on the floor. La. R.S. § 9:2800.6(C)(1) specifically defines "constructive notice," stating that it "means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." When seeking to meet La. R.S. § 9:2800.6(B)(2) by proving constructive notice, a plaintiff must prove that "the condition existed for some time period prior to the fall." <u>White</u>, 699 So. 2d at 1084-85. "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." <u>Id.</u> at 1084. "There is no bright line time period," and "the time period need not be specific in minutes or hours." <u>Id.</u> Though this is a fine distinction and it is a difficult burden for a plaintiff to prove this element, it "is not an impossible burden." <u>Id.</u> at 1085. Thus, at the summary judgment stage, a plaintiff must demonstrate a genuine dispute of fact regarding whether the condition existed for at least "some time period" prior to the plaintiff's fall. <u>Id.</u>

There is no genuine dispute of fact regarding whether the condition existed for at least "some time period" prior to the fall. Id. As noted in Section II, B, *supra*, neither Mrs. nor Mr. Forbis saw any liquid on the floor at all. See Record Document 14-2 at 4 (deposition page 31 lines 16-22); see Record Document 14-3 at 2 (deposition page 26 lines 10-23). Again, Beyersdorf stated that she looked at the floor *after* the fall but did not see any liquid there. See Record Document 14-4 at 2 (deposition page 10 lines 2-7).

Thus, as with the analysis of whether there is a genuine dispute of fact regarding whether the condition existed at all, the only evidence supporting the conclusion that the condition was on the premises for at least "some period of time" before Mrs. Forbis' fall are Mrs. Forbis' statements that: (1) she fell after her foot slipped on what felt like some slippery substance; and (2) after she fell, she felt wetness on the side of her clothes where she fell. See Record Document 14-2 at 5 (deposition page 32 lines 8-12), at 6 (deposition page 34 lines 17-25), and at 7 (deposition page 35 lines 1-12). Though this is enough for a genuine dispute of fact regarding the existence of the condition, it is not enough evidence for a genuine dispute of fact regarding the length of time the condition was on the floor because of the equal inference rule.

Under these facts, it would be reasonable to conclude that if there was liquid on the floor, it had been there for at least "some period of time," perhaps from customers coming inside from the rain and dripping water on the floor all day. White, 699 So. 2d at 1084-85. It would be equally reasonable to conclude that it had just appeared on the floor immediately before Mrs. Forbis walked in the area, such as if only a single person who walked in the area just before Mrs. Forbis had dripped water on the floor. Though both are *reasonable* conclusions, a jury could not reasonably conclude that one is more

*probable* than the other based on the "meager circumstantial evidence" in the summary judgment record related to the length of time the condition was on the floor, even assuming that Mrs. Forbis' statements are true. City of Keller, 168 S.W.3d at 813; see Lozano, 52 S.W.3d at 158; see Bagley v. Albertson's, Inc., 492 F.3d 328, 330 (5th Cir. 2007) ("courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are no more likely than any other potential scenario") (internal quotations omitted).

Under these circumstances, a court must rule on summary judgment against the party that bears the burden of proving at trial that the fact in question is more likely than not, which is Mrs. Forbis in the instant action. See Pennsylvania R. Co., 288 U.S. at 339; see Anderson, 477 U.S. at 252; see Little, 37 F.3d at 1075 ("we do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts"). Thus, the Court finds that there is no genuine dispute of fact regarding the length of time the condition had been on the floor, and therefore there is no genuine dispute of fact regarding whether Ignite had constructive notice of the condition.

### D. The Summary Judgment Evidence Does Not Demonstrate a Genuine Dispute of Material Fact Regarding Whether Ignite Created the Condition.

The Court's decision that there is no genuine dispute of material fact regarding whether Ignite had actual or constructive notice of the existence of an allegedly hazardous condition concludes the analysis of all of the bases for Ignite's Motion for Summary Judgment. See Record Document 14-1 at 7. However, this decision only relates to two of the three possible methods of meeting subsection (B)(2) of La. R.S. § 9:2800.6, one of the elements a plaintiff must meet in a negligence claim that falls under the Louisiana merchant liability statute. That section states that a plaintiff may meet this element by

proving "the merchant *either* created *or* had actual *or* constructive notice of the condition which caused the damage, prior to the occurrence." La. R.S. § 9:2800.6(B)(2) (emphasis added); see Wells v. Wal-Mart Stores, Inc., 754 So. 2d 273, 274-76 (La. App. 1 Cir. 09/24/1999) (similarly emphasizing that the statute contains three different ways to meet element (B)(2)). Mrs. Forbis merely sued for "negligence" and did not specify a method of proving element (B)(2), alleging that Ignite was negligent by "failing to keep and maintain the premises in a safe manner" and "failing to keep a safety mat in place at the entrance."[3] Record Document 1-2 at ¶ 12 (original state court petition). Thus, this third method of meeting that element has not been foreclosed by the Court's decision on Ignite's Motion, as the Motion only argued that there was no evidence for the existence of the condition, actual notice of the condition, and constructive notice of the condition. See Record Document 14-1 at 7. In other words, granting Ignite's Motion only results in a partial summary judgment and does not end the case.

However, even though Ignite did not seek summary judgment on the basis that there is no genuine dispute of fact regarding whether Ignite "created" the condition on the premises, the Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). A court may grant summary judgment under Fed. R. Civ. P. 56(f)(3) so long as it provides

---

[3] The parties devote very little argument to the allegation that there was no safety mat on the premises. See Record Documents 14-1 and 19-2. There is a genuine dispute of fact regarding whether there was a mat, as Mrs. Forbis stated that there was not one and Beyersdorf stated that there was. See Record Documents 14-2 and 14-4. However, this dispute is not *material*; the material facts at issue are whether there was a potentially hazardous "condition" (a slippery liquid) on the floor, and whether Ignite either "created" or had "actual" or "constructive notice" of that condition as those terms are defined in La. R.S. § 9:2800.6(B)(2). Even if there was no mat and there was liquid on the floor, as Mrs. Forbis alleges, there is still no evidence that Ignite either created or had actual or constructive notice of the liquid. See Sections II, B, C, and D, *supra*.

the parties with "ample notice [and] time to respond" and "consider[s] everything" that the parties claim to be probative of the matters that have been identified. <u>Santana v. Cook Co. Bd. of Review</u>, 679 F.3d 614, 619 (7th Cir. 2012); <u>see also</u> <u>Wang v. Prudential Ins. Co. of Am.</u>, 439 Fed. Appx. 359, 363 n.2 (5th Cir. 2011).

From the summary judgment evidence that has been submitted with the instant Motion, the Court makes the preliminary finding that there is no genuine dispute of fact regarding whether Ignite "created" the condition on the premises as stated in La. R.S. § 9:2800.6(B)(2). However, Mrs. Forbis must be given the opportunity to respond before the Court can make such a finding final. Briefing deadlines are set forth below.

**CONCLUSION**

Ignite's Motion for Summary Judgment is **GRANTED**. The Court finds that there is no genuine dispute of fact, based on the summary judgment evidence viewed in the light most favorable to Mrs. Forbis, that Ignite had either actual or constructive notice of any potentially hazardous condition on the floor of Joe's on the day of Mrs. Forbis' fall. The Court also makes the preliminary finding that there is no genuine dispute of fact regarding whether Ignite "created" the condition on the premises as stated in La. R.S. § 9:2800.6(B)(2).

Accordingly, if Mrs. Forbis wishes to oppose summary judgment on the basis that there is a genuine dispute of fact on this element, she is **ORDERED** to respond with (1) a memorandum not to exceed ten pages addressing solely whether there is any evidence that Ignite "created" the allegedly hazardous condition on the floor under La. R.S. § 9:2800.6(B)(2), and (2) any summary judgment evidence in support, within fourteen days of the instant Memorandum Ruling and Order. Absent such a response, the Court

will render judgment in favor of Ignite and order the Clerk of Court to close the instant case. The deadline for Ignite to respond to such a memorandum and supporting evidence, if any, shall be seven days after Mrs. Forbis' filing. Ignite's response may not exceed ten pages, and Ignite may attach additional evidence in support of its contentions.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 6th day of April, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE